FREDERICKS, respondent, *v.* DAVIS, appellant.

FRAUDULENT CONVEYANCE — *estoppel.* The grantor in an alleged fraudulent conveyance, with a full knowledge of the facts, is estopped from testifying, against his own warranty of title, that the same is fraudulent and void. *Phillips* v. *Wooster,* 36 N. Y. 414.

AUTHENTICATION OF OFFICIAL CHARACTER — *deputy.* The certificate of a deputy county recorder to the official character of an acting justice of the peace, taking a deposition under a commission with a general power to any acting justice to execute the same, must be tested by the laws of the Territory where taken, and so tried is as good as if made by the recorder in person.

ASSIGNMENT OF ERRORS — *instructions — receiving verdict.* If errors in instructions given by the court below are relied on, the same must be specially noticed in exceptions taken or they will be disregarded. Objections to the form of receiving the verdict of a jury can only be considered by the a pellate court when saved by proper bill of exceptions.

*Appeal from First District, Gallatin County.*

THIS cause was tried in the court below by BLAKE, J.

CHUMASERO & CHADWICK, for appellant.

The deposition of Myers was improperly admitted. The notice of application for a commission did not specify the time. The title of the case was incorrectly given. It was not taken by the party to whom the commission was issued; does not show that the witness was sworn in the case; does not show the official character of the person taking it; is not attested by an official seal.

The deposition of Drew should have been ruled out. It was not taken by the person to whom the commission issued, and the official character of the officer taking it is only attested by one who assumes to be a deputy recorder.

The deed from Drew to plaintiff was improperly admitted. It was not acknowledged as required by law. Cod. Sts. 396. See §§ 3, 6, 7, 21.

The court erred in refusing to admit the testimony of Davis as to the fraudulent character of the conveyance made by him to plaintiff. The declarations of W. A. Fredericks and W. H. Drew, while owning the property, should have been admitted.

So, too, should the letters offered in evidence. The consideration named in a deed may always be inquired into.

Some of the instructions given were too strong.

The court erred in receiving the verdict of the jury during an interval of adjournment without notice to the parties.

Johnston & Toole and Shober & Lowry, for respondent.

The deposition of Myers was properly admitted. It was taken in accordance with the special law of the eighth session, 1874, p. 49, § 1. Proof of service of notice and interrogatories was made in open court on one of the attorneys of defendant. The parties were sufficiently described; the deposition was taken by one duly authorized and is properly certified.

The deposition of Drew was properly admitted. It was taken under a lawful commission, and the certificate of a deputy recorder is sufficient. Harston's Pr. 262; 25 Cal. 184; 36 id. 202.

Davis could not question the deed from Drew to plaintiff.

Nor could he impeach his own conveyance to plaintiff.

The letters of Fredericks and Drew were only admissible for the purpose of impeachment as ruled by the court.

The instructions given by the court were in accordance with the law, and no exceptions were taken from them or to the manner of receiving the verdict of the jury, such as an appellate court can take notice of.

Wade, C. J. The plaintiff brings this action for partition and accounting, alleging that she is tenant in common with the defendant Davis, and the owner of an undivided one-half of a certain flouring mill and premises situate in the upper Willow creek valley, Gallatin county; that she has expended large sums of money in improving, repairing and operating the same; that defendant Gilbert, as her mortgagee, holds a lien thereon; that the same cannot be partitioned; whereupon she asks for a sale thereof; for an accounting between herself and Davis; and for a distribution of the proceeds of sale according to the respective rights, liens and interests of the parties. The defendant Davis admits that he is the owner of the undivided one-half of the property, but denies that the plaintiff has any interest therein,

and avers that W. A. Fredericks, the husband of the plaintiff, is his co-tenant, and the owner of an undivided one-half thereof; charges that the title of plaintiff and the mortgage to Gilbert are fraudulent and void, taken and given to hinder, delay, and defraud creditors, at the instance of W. A. Fredericks, the real owner; and for a cross-complaint alleges that W. A. Fredericks at the time of the erection of said flouring mill and prior thereto was greatly indebted to this defendant, for which the defendant secured a lien upon Fredericks' interest in the mill by commencing a suit against him and levying an attachment thereon; whereupon he asks that the mortgage to Gilbert and the conveyance to the plaintiff be declared null and void; for an accounting between himself and Fredericks, and prays that the property be sold and the proceeds brought into court to await the order of distribution thereof.

A brief statement of the facts is necessary to present the questions raised on this appeal. It appears that prior to July 1, 1871, Davis held the title to a certain saw-mill situate near Bozeman, Gallatin county, an undivided one-half of which, he says, he held in trust for W. A. Fredericks, the owner, the plaintiff and W. H. Drew declaring that Fredericks had no interest therein. Be this as it may, on that day, by a conveyance or bill of sale in writing, Davis sold and conveyed to the plaintiff and W. H. Drew the said saw-mill for the sum of $2,000, together with all the privileges and appurtenances thereto belonging, agreeing to warrant and defend the title to the property so sold, which instrument of conveyance was duly recorded in Gallatin county records.

It further appears that on the 30th day of July, 1871, Davis and W. H. Drew entered into a contract in writing for the construction and erection of a flouring mill in the upper Willow Creek valley; that pursuant to the terms thereof, such mill was erected, and that each of said contracting parties became the owner of an undivided one-half interest therein and the rights, privileges and premises thereto belonging. W. A. Fredericks was a millwright and worked for Drew in the construction of the mill, and subsequently, upon its completion leased Davis'

interest, and took charge of the business of manufacturing flour therein. On the 30th day of March, 1874, the plaintiff sold her interest in the saw-mill to Drew for $2,000, receiving in payment certain notes and securities, and at the same time Drew sold to plaintiff his interest in the flouring mill for the sum of $2,000, which sum he and the plaintiff both say was paid in cash at the time of the sale and purchase, which sale was duly evidenced by a deed of conveyance, duly executed by Drew and wife to plaintiff, and recorded in the county records. After the plaintiff had thus acquired Drew's interest in the mill, W. A. Fredericks, her husband, continued the business of manufacturing flour therein until the expiration of his lease from Davis, and subsequently thereto, the plaintiff brings this action for partition, basing her right and title to the undivided one-half of the mill and premises upon the deed thereof from Drew and wife to herself.

Davis attacks this conveyance by alleging that W. A. Fredericks was the owner of the undivided interest in the saw-mill, and that the same was conveyed to the plaintiff to hinder, delay and defraud creditors, and that the plaintiff traded her interest in the saw-mill thus acquired to Drew for his interest in the flouring mill, whereby her title to the flouring mill became fraudulent and void.

On the trial the defendant Davis, for the purpose of showing that his bill of sale and conveyance of the undivided one-half of the saw-mill to the plaintiff was fraudulent and void as against creditors, offered to prove the consideration for such conveyance; that the same was paid by W. A. Fredericks, the husband of plaintiff, to whom he offered to convey, but was directed by the husband to convey to his wife, the plaintiff; the declaration of the husband that the property belonged to him, and also declarations of the wife to the same effect. This testimony was excluded and its exclusion is assigned as error.

In order to appreciate fully the nature of the evidence thus sought to be introduced, it should be further stated that Davis had previously testified that W. A. Fredericks was the real owner of the undivided one-half of the mill conveyed by him to plaintiff; that Davis was the trustee of Fredericks, holding this title

for him ; that at the time of this conveyance Fredericks was largely indebted to Davis and others, and was insolvent. He offers further to prove not only that Fredericks was the real owner of the property, but that he paid the consideration therefor mentioned in the bill of sale.

It therefore appears that Davis, at the time of the conveyance to plaintiff, knew that she had no interest in the property conveyed, and that as to the creditors such conveyance was fraudulent and void, and with this knowledge he promised to warrant and defend her title to the property.

In view of these facts, was the testimony offered in behalf of Davis properly excluded ? If the sale was fraudulent, Davis helped to perpetrate the fraud, and with a full knowledge of all the facts. Could he under such circumstances impeach his own conveyance by which the fraudulent sale was executed ? Having promised to warrant and defend the title of plaintiff, could he attack his own conveyance to show such title fraudulent and void ?

The mere asking of these questions suggests the inevitable answer they must receive. No man can be allowed to take advantage of his own wrong. Davis with a full knowledge of all the facts promised to warrant and defend a title that he knew to be fraudulent, and he cannot now be heard to declare the fraud in order to set such title aside. He cannot impeach his own deed. He cannot falsify his own warranty. So far as he is concerned the title of the plaintiff in the saw-mill after his bill of sale, conveyance and warranty was perfect. This doctrine is supported by the case of *Phillips* v. *Wooster*, 36 N. Y. 414, wherein the court says: "The position which the plaintiff occupies in relation to the transaction complained of as fraudulent, excludes him from alleging the fraud, or claiming any benefit against it. The conveyance against which he now seeks to derive advantage from the property was made by himself, with a full knowledge of all the facts as they existed at the time, as we are bound to presume, since he has shown nothing to the contrary. So that if the money paid was the debtor's, as he now insists it was, and the conveyance to the wife therefore

fraudulent as against creditors, it was not fraudulent as against him, for he was not only consenting to the act, but himself performed it." And so, if the money paid for the saw-mill was the money of W. A. Fredericks, and the conveyance to his wife therefore fraudulent as against creditors, it was not fraudulent as against Davis, for he was not only consenting to the act, with full knowledge of all the facts, but himself performed it. See, also, *Gales* v. *Mowery*, 15 Gray, 564; *Dodge et al.* v. *Freedman's S. & T. Co.*, 93 U. S. 383; *Harvey* v. *Varney et al.*, 98 Mass. 118.

The proposed testimony was properly excluded. In another view of the case, the testimony was immaterial. Admitting that the conveyance of the saw-mill from Davis to the plaintiff was fraudulent, and that Davis stood in a position to take advantage of the fraud, there is nothing in the case to impeach or in any manner to invalidate the conveyance from Drew to the plaintiff of his undivided one-half interest in the flouring mill whereby she became a tenant in common therein with Davis and entitled to demand partition thereof. The plaintiff, Drew and Fredericks, all testify that the plaintiff from her own separate funds paid to Drew $2,000 in cash for his interest in the flouring mill, and there is no attempt on the part of Davis to contradict this testimony. And so the transactions in relation to the saw-mill, however fraudulent they might have been, became wholly immaterial, because not in any way connected with the plaintiff's acquisition of title to the flouring mill.

2. The defendant, Davis, attacks the deposition of W. H. Drew, because the official character of the justice of the peace before whom the same was taken in Arizona is authenticated by the certificate of a deputy county recorder, and not by the recorder himself. This certificate does not come within the purview and is not controlled by the act of congress in relation to the authentication and proof of records, etc., in the different States (R. S., § 906), nor by our own statute as to affidavits taken before a judge of a court of another State or foreign country (Cod. Sts, 130, § 476), but is controlled by the statutes of Arizona, to which we must look to determine its validity. The

statute of Arizona (Com. Laws, 56, § 8) requires each justice of the peace, before entering upon the duties of his office, to file his official bond with the county recorder. The Arizona statute also provides, that the recorder of each county may appoint a deputy recorder, and makes the recorder and his sureties responsible for the faithful performance of his duties by such deputy.

The act does not define the authority or point out the duties of the deputy recorder, and in such a case the deputy duly appointed and qualified may perform any act that his principal might legally perform. "In general, has power to do every act, which his principal might do." 1 Bouv. L. D. 463. See, also, *Emmal* v. *Webb*, 36 Cal. 197; *Muller* v. *Boggs*, 25 id. 184; Harst. Pr. 267.

The certificate authenticating the official character of the justice of the peace, before whom the deposition was taken, was properly made under the laws of Arizona by a deputy recorder. The commission was issued to J. Logan, *or any acting justice of the peace* of Mohave county, Territory of Arizona, and the deposition was taken by R. R. Baker, a justice of the peace of said county, at the time and place named. The officer so taking the deposition had authority under the commission to take the same, and the objection that the deposition was not taken by J. Logan was properly overruled.

The depositions of George L. Kent and Wm. H. Myers, appear to have been taken in pursuance of notices properly served.

Counsel for the defendants say that the court erred in giving to the jury the several instructions numbered 1, 2, 3, 4, 5, 6, 7, 8, and also in refusing to give instructions asked for by Davis and numbered 1, 2, 3, 4, 5, 6, but they do not deign to point out the error complained of, nor to give any reason for their apparently confident assertion thereof. And we would be entirely justified in concluding that they had no reason to give and that they indulged the hope that the court would be able to discover error where they had failed to do so. We have been as unsuccessful as counsel in discovering any errors in the instructions, and all the questions that might have been raised thereon have been substantially disposed of in the first subdivision of this

opinion, in passing upon the admissibility of the evidence therein mentioned.

Davis objects that the deed from Drew to plaintiff of his undivided interest in the flouring mill was not properly acknowledged. If such were the fact, the creditors of Drew or the grantees of the plaintiff might object, but Davis does not stand in a position to do so. He cannot raise the question.

If W. A. Fredericks is not his co-tenant in the mill and the owner of an undivided one-half thereof, then his defense entirely fails, and it is wholly immaterial to him, and is a matter about which he cannot inquire in the action under his answer, as to who is the owner of such undivided one-half of the mill. If Fredericks is not the co-tenant of Davis in the mill, then so far as Davis is concerned, it is a matter of no consequence in this action who is such co-tenant. As to the reception of the verdict, there is nothing in the transcript to show that it was not received in open court, in regular form, after the names of the jurymen had been called by the clerk.

No exception was saved as to the manner in which the verdict was received, and we are not called upon to express an opinion upon alleged errors to which no exceptions were taken. Judgment affirmed with costs.

*Judgment affirmed.*