[Civ. No. S. C. 9.   Second Appellate District, Division One.—March 1, 1937.]

ETHEL L. A. BELLESFIELD, Respondent, v. WALTER I. Le FAVOR, Appellant.

Roy C. Kaiser for Appellant.

Powers & Martin for Respondent.

DESMOND, J., *pro tem.*—This is an appeal by the defendant from a judgment whereby, in an action for declaratory relief, the trial court awarded to the plaintiff the sum of $2,350. It is contended that the judgment is contrary to the law and the evidence, the further point being made that the failure of the trial court to find on the plea that the action was barred by the statute of limitations renders the findings insufficient to support the judgment.

On May 1, 1928, the respondent undertook to purchase from the appellant a one-half interest in the printing business conducted by him in the city of Los Angeles. The agreed purchase price was $5,340, payments to be made at the rate of $50 per month or more, at the option of the respondent. The sum of $1500 was paid down and thereafter monthly payments were made until a total of $2,350 was paid upon the purchase price. On October 22, 1929, the appellant endorsed upon the formal contract which had been signed by the parties the following notation:

"October 22, 1929.

"The equity of $2350 at the above date will stand as a liability against the business and no default will be made by non-payment of principal or interest.

"W. L. LeFavor."

On November 21, 1933, four years and one month after the above-quoted memorandum was signed by appellant, he made a written demand upon respondent requiring the payment to him within ten days of the sum of $3,640 "with interest thereon at 6% from September 22, 1928", claiming that that amount was due him under the terms of the contract of May 1, 1928. By this demand, the appellant undertook to revoke and rescind any waiver of payment or extension of time of payment under the contract, and declared the contract in default. Notice was given in the demand that the appellant was at all times, and at the present time, ready, willing and able to perform his obligations under the contract, and to deliver to the respondent a bill of sale of a one-half interest in the printing business, closing with a statement to the effect that unless the amount mentioned were paid within the ten day period, "the said contract will be deemed discharged and all obligations thereunder released and all moneys paid thereunder shall be deemed forfeited as liquidated damages for the breach of said contract".

Since the full purchase price for the one-half interest in the printing business was fixed at $5,340, and by the very terms of the demand it appeared that respondent had paid on account thereof the sum of $2,350, it is not clear why a demand was made for $3,640, or $650 more than the amount agreed upon. The respondent has not paid any portion of the amount demanded by appellant; her reaction to the demand appears in the complaint filed in this case on March 15, 1934, approximately four years and five months following the date of the notation entered by appellant on the contract of purchase.

The complaint set up the contract and the notation, alleging that the latter instrument constituted a waiver and abandonment of all sums due or to become due over and above the sum of $2,350. The prayer of the complaint asked that the rights and obligations of the parties be determined; that the amount due from the defendant to the plaintiff be fixed; and that "the equity be determined as a valid and subsisting undivided interest in and to the entire printing establishment, free and

clear of any setoffs or counterclaims. And for such further relief as the Court may deem meet in the premises." Respondent's answer pleaded no consideration for the agreement of October 22, 1929, alleged that appellant was at that time in default, and set up the bar of four years created by the statute of limitations. The answer also pleaded laches and included a counterclaim for $3,640 for breach of contract. The trial court made no specific finding upon the plea of laches or of the statute of limitations, but found in favor of respondent on the other defenses urged by appellant, as well as upon the counterclaim.

By the judgment no lien or other charge was imposed upon the printing establishment, the only order established by the judgment reading: "the plaintiff to have and recover of and from Walter L. Le Favor the sum of $2,350.00, without cost".

Not knowing what testimony was produced at the trial, the record on this appeal consisting merely of the clerk's transcript, we must decide from the facts above related and a study of the documents before us in the pleadings whether the judgment can be and should be sustained. One of the first things to attract our attention is the date of the notation, October 22, 1929. This was the time when the stock markets of the country crashed, business everywhere collapsed and no one could foresee or anticipate what the future held or when material prosperity might return. In endeavoring to determine what appellant meant when he wrote upon the original contract this notation couched in indefinite language, the court was justified in considering the time and the conditions then prevailing. It is not a strained construction to say that under the circumstances existing at that time this notation was intended to operate as a suspension for an indefinite period of the requirement of monthly payments under the contract, for it is expressly stated that "no default *will be made* by nonpayment of principal or interest" and the writing was also assurance to the respondent that the money theretofore invested would not be lost for "the equity of $2350 at the above date *will stand* as a liability against the business". Support is given to this construction of the agreement by the fact that, so far as appears from the record, no default was claimed during the four-year period following the date of the notation, but almost immediately thereafter, on November 21, 1933, respondent gave written notice that he

"hereby revokes and rescinds any waiver of payment or extension of time of payment which may have heretofore been made and declares said contract in default and demands that all sums past due and unpaid under said contract with interest be paid". We think this attempted revocation or rescission of "any waiver of payment or extension of time of payment which may have heretofore been made", is couched in language that is significant; in fact it is practically an admission that the time requirement as to payments theretofore due under the contract had been waived. ■ In this same notice appellant offered to perform and to deliver a bill of sale to a one-half interest in the business upon receipt of all moneys due, but "unless said contract is performed and all moneys due and unpaid are paid according to said contract and this demand within ten (10) days from the date hereof . . . the said contract will be deemed discharged and all obligations thereunder released, and all moneys paid thereunder shall be deemed forfeited as liquidated damages for the breach of said contract". This notice was a threat of very summary action. It threw overboard the agreement under which the parties had been operating (no default having been claimed prior to the date of the notice), and proposed to appropriate the money already invested by respondent (which we have noted was to stand as a liability against the business), unless the respondent should produce in a lump sum within a few days an amount of money, exceeding by $650, the balance of the price agreed upon for the half interest in the business. Naturally the respondent treated this as a repudiation of the agreement between herself and the appellant and, in our judgment, was entitled immediately thereafter to sue for the money which she had paid to appellant and which very likely he had used in his business in the years of deep economic depression.

■ The agreement that "the equity of $2350 at the above date *will stand* as a liability against the business" was not limited to a specified time and, in our opinion, therefore, was continuous, as a waiver of the statute of limitations was held to be in *State Trust Co.* v. *Sheldon,* 68 Vt. 259 [35 Atl. 177]. See, also, *Brownrigg* v. *de Frees,* 196 Cal. 534 [238 Pac. 714]. By this agreement the *status quo* was to be maintained indefinitely, an object that would fail of accomplishment if the statute of limitations were to operate meanwhile. That the trial court took this view is evident from the judgment that was

signed. It may be that we could infer, as ultimate facts inevitably flowing from the facts found (*Emmal* v. *Webb*, 36 Cal. 197, 204), that this action is not barred by laches or by the statute of limitations, but we prefer to make a definite finding to that effect. Since the evidence clearly shows that the promise of the appellant not to declare a default, and further, to maintain respondent's interest in the business, was broken on November 21, 1933, we resort to the provisions of section 4¾ of article VI of the Constitution, and section 956a of the Code of Civil Procedure, and hereby make and enter our finding (additionally to the findings of the trial court), that this suit, filed within five months after November 21, 1933, is not barred by laches or by the statute of limitations.

The judgment is affirmed.

Houser, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 29, 1937.